**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **REYNALDO MUNOZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-03210 |
| | ) | |
| **REYNALDO GUEVARA, GERI LYNN** | ) | District Judge Sharon Johnson Coleman |
| **YANOW, as special representative of** | ) | |
| **ERNEST HALVORSEN, EDWIN** | ) | Magistrate Judge Young B. Kim |
| **DICKINSON, MICHAEL O'GRADY,** | ) | |
| **JEAN MORETH, LEE EPPLEN,** | ) | |
| **UNKNOWN OFFICERS OF THE** | ) | |
| **CHICAGO POLICE DEPARTMENT** | ) | |
| **and the CITY OF CHICAGO,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION TO BIFURCATE
PLAINTIFF'S *MONELL* CLAIM AND TO STAY *MONELL* DISCOVERY**

## TABLE OF CONTENTS

BACKGROUND .......................................................................................................................... 1

LEGAL STANDARD................................................................................................................... 4

ARGUMENT................................................................................................................................ 5

I. *MONELL* LITIGATION IS UNNECESSARY WHETHER PLAINTIFF SUCCEEDS OR
FAILS ON THE CLAIMS AGAINST THE INIDIVDUAL OFFICERS. ............................ 6

   A.  There is no *Monell* liability unless Defendant Officers are found liable.......................... 6

   B.  The City's indemnification of Defendant Officers and Consent Judgment obviates the
   need for any further proceedings if Plaintiff prevails against the Defendant Officers. . 10

II.  BIFURCATION WILL PROMOTE EFFICIENCY AND JUDICIAL ECONOMY. ...... 12

III. BIFURCATION WILL PREVENT UNDUE PREJUDICE TO DEFENDANTS. ........... 18

CONCLUSION........................................................................................................................... 21

## CASES

*Ackerman v. Allen,* 2017 WL 1536447 (N.D. Ill. Apr. 27, 2017)................................................... 7

*Andersen v. City of Chicago*, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016)............................ 6, 10

*Arrington v. City of Chicago,* 2018 WL 3861552 (N.D. Ill. Aug. 14, 2018)................................. 7

*Bd. of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown,* 520 U.S. 397 (1997) ................................ 3

*Bishop v. White,* 2023 WL 35157 (N.D. Ill. Jan. 4, 2023)........................................................... 18

*Bradford v. City of Chicago,* 2019 WL 5208852 (N.D. Ill. Oct. 16, 2019)............................. 5, 21

*Castillo v. City of Chicago*, 2012 WL 1658350 (N.D. Ill. May 11, 2012) ................................... 10

*Chlopek v. Fed. Ins. Co.*, 499 F.3d 692 (7th Cir. 2007)................................................................. 4

*City of Canton,* 489 U.S. 378 (1989) ............................................................................................. 3

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986)................................................................... 6, 8

*Clarett v. Suroviak,* 2011 WL 37838 (N.D. Ill. Jan. 3, 2011)....................................................... 7

*Cornfield by Lewis v. Consol. High Sch. Dist. No. 230,* 991 F.2d 1316 (7th Cir. 1993)............. 13

*Dollard v. Whisenand,* 946 F.3d 342 (7th Cir. 2019) ................................................................. 19

*EG Milestone v. City of Monroe, Wis.,* 665 F.3d 774 (7th Cir. 2011) .......................................... 20

*Fuery v. City of Chicago,* 2015 WL 715281 (N.D. Ill. Feb. 17, 2015)......................................... 19

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005)........................................................................... 9

*Harris v. City of Chicago,* 2016 WL 3261522 (N.D. Ill. June 14, 2016) ................................. 7, 10

*Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117 (7th Cir. 1999)..................................... 4

*Jones v. City of Chicago,* 1999 WL 160228 (N.D. Ill. Mar. 10, 1999) .......................................... 5

*Kitchen v. Burge,* 2012 U.S. Dist. LEXIS 158088 (N.D. Ill. Nov. 2, 2012)..................... 11, 19, 20

*Krocka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000)............................................................... 5

*Lindsey v. Orlando*, 232 F. Supp. 3d 1027 (N.D. Ill. 2017) ........................................................... 9

*Matthews v. City of E. St. Louis,* 675 F.3d 703 (7th Cir. 2012)...................................................... 6

*McNabola v. Chicago Transit Auth.,* 10 F.3d 501 (7th Cir. 1993) ............................................... 13

*McTigue v. City of Chicago,* 60 F.3d 381 (7th Cir. 1995) .............................................................. 3

*Medina v. City of Chicago,* 100 F. Supp. 2d 893 (N.D. Ill. 2000)...................................... 5, 11, 12

*Mendez v. City of Chicago,* 2020 U.S. Dist. LEXIS 52418 (N.D. Ill Mar. 26, 2020) .................... 9

*Mitchell v. City of Chicago,* 2019 U.S. Dist. LEXIS 231746 (N.D. Ill. Sept. 18, 2019)............... 6

*Montano v. City of Chicago,* 535 F.3d 558 (7th Cir. 2008 ............................................................. 3

*Ojeda-Beltran v. Lucio,* 2008 WL 2782815 (N.D. Ill. July 16, 2008).................................... 13, 18

*Palka v. City of Chicago,* 662 F.3d 428 (7th Cir. 2011)................................................................ 14

*Prembaur v. City of Cincinnati,* 475 U.S. 469 (1986) ................................................................... 20

*Readus v. Dercola*, 2012 WL 1533167 (N.D. Ill. 2012)................................................................. 7

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008) .............................................................................. 9

*Sopron v. Cassidy,* 2023 WL 6213713 (N.D. Ill. Sept. 22, 2023) ................................ 8, 10, 12, 19

*Spanish Action Comm. of Chicago v. City of Chicago,* 766 F.2d 3151 (7th Cir. 1985) .............. 11

*Swanigan v. City of Chicago*, 881 F.3d 577 (7th Cir. 2018)........................................................ 13

*Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) ............................... 9, 10, 13

*Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293 (7th Cir. 2009) ..................................... 7, 8, 9

*Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000) ................................................................... 13

*Veal v. Kachiroubas*, 2014 WL 321708 (N.D. Ill. Jan. 29, 2014) ................................. 7, 10, 13, 20

*Washington v. Boudreau,* 16-CV-1893, 2023 WL 184239 (N.D. Ill. Jan. 13, 2013) ....... 17, 19, 20

*Williams v. City of Chicago*, 2018 WL 2561014 (N.D. Ill. June 1, 2018)............................ 6, 8, 12

## STATUTES

745 ILCS 10/9-102 ...................................................................................................................... 11

## RULES

Fed. R. Civ. P. 26(d) ..................................................................................................................... 5

iv

Defendant City of Chicago, Reynaldo Guevara, Geri Lynn Yanow, as special representative of Ernest Halvorsen, deceased, Edwin Dickinson, Michael O'Grady, Jean Moreth, and Lee Epplen, by their respective undersigned attorneys, and pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, move this Court to bifurcate Plaintiff's §1983 claim against the City of Chicago and stay discovery and trial on this claim. In support thereof, Defendants state:

## BACKGROUND

Plaintiff, Reynaldo Munoz (hereinafter "Plaintiff"), has sued six individual police officers (collectively "Defendant Officers") and the City of Chicago ("Defendants"). Plaintiff's claims stem from his arrest, prosecution, and conviction for the 1985 murder of Ivan Mena and attempted murder of Bouvier "Bobby" Garcia (collectively referred to as the "Mena Murder"). Plaintiff alleges that Defendants violated his due process rights by fabricating evidence, concealing exculpatory evidence, and coercing witnesses. Plaintiff also alleges that Defendants conspired to deprive Plaintiff of his constitutional rights and failed to intervene to protect those rights, and also brings federal and state law claims of malicious prosecution, we well as state law claims of intentional infliction of emotional distress, willful and wanton conduct, and civil conspiracy against Defendant Officers. Against the City, Plaintiff brings a *Monell* claim, alleging the constitutional violations he suffered were carried out in accordance with the City's policies, practices, and customs.

According to Plaintiff, at the time of his arrest, the City had policies and practices that included (1) allowing officers to conceal exculpatory evidence and clandestine files from defendants; (2) manipulating witnesses to obtain false identifications; (3) manipulating witnesses to influence their testimony; (4) using other tactics to secure arrest, prosecution, and conviction with regard to guilt or innocence; (5) failing to discipline officer misconduct; (6) facilitating a code

of silence. *See* Amended Complaint ("AC"), Dkt. 62, at ¶¶183-184, 186, 189-193. Plaintiff further

alleges that the Defendant Officers' actions were taken pursuant to the following "*de facto* policies,

practices and/or customs":

> (a). [M]anufacturing and fabricating false witness statements and manipulating and lying to witnesses to influence unreliable and inaccurate testimony;

> (b). filing false reports and giving false statements and testimony about interrogations and witness interviews or constructing parts or all of witness statements; suppressing evidence concerning interrogations and/or witness interviews; pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of fabricated witness statements, including those by "jailhouse snitches;" and otherwise covering up the true nature of those interviews and/or interrogations.

> (c). failing to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of misconduct, on how to avoid false arrests, wrongful imprisonments, malicious prosecutions, and wrongful convictions, and on the proper manner in which to conduct interrogations of witnesses and arrestees. Among those the City failed to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control were the repeat offenders Defendants Guevara and Halvorsen;

> (d). perpetuating, encouraging and condoning the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a-d above, whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated, suppressed and destroyed evidence of which they were aware, despite their obligation under the law and police regulations to report. This code of silence caused police officers either to remain silent or give false and misleading information during official investigations and Grand Jury proceedings in order to protect themselves or fellow officers from discipline, civil liability, or criminal charges. The code of silence also caused police officers to perjure themselves in criminal cases where they and their fellow officers have fabricated evidence or concealed exculpatory evidence.

*Id.* at ¶198. Plaintiff claims that the alleged City policies were knowingly approved by the City's

policymakers and directly and proximately caused Plaintiff's conviction. *Id.* at ¶¶195-200.

To prevail on his §1983 claims, Plaintiff must first prove he suffered a constitutional

violation and his claims against the Defendant Officers are straightforward allegations of

intentional misconduct causing him to either be detained prior to trial or resulting in an unfair trial leading to his conviction. On the other hand, Plaintiff's *Monell* claim, as alleged, is vague and wide sweeping, and the elements of a *Monell* claim go much further than proving a constitutional violation, which naturally requires vastly more evidence. On top of proving the constitutional violation that he must prove anyways, and since liability cannot be imposed against a municipality under §1983 pursuant to the principles of *respondeat superior*, Plaintiff must prove a municipal policy caused his violation, which, to start, Plaintiff can establish in one of three ways: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the act of a person with final policy making authority." *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995); *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978). Under any of these theories, Plaintiff must also demonstrate that the City of Chicago was "deliberately indifferent" to the "known or obvious consequences" of the alleged policy. *See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown,* 520 U.S. 397, 407 (1997); *Montano v. City of Chicago,* 535 F.3d 558, 570 (7th Cir. 2008). Even more, Plaintiff must demonstrate the existence of a direct causal link between the municipal policy and the constitutional injury. *City of Canton,* 489 U.S. 378, 385 (1989); *Bryan County,* 520 U.S. at 400. There are additional sub-elements for whichever policy claim (one through three above) that Plaintiff chooses to advance.

Experience in bifurcated *Monell* claims in Guevara-related cases like this one establishes that bifurcation is vastly more efficient and promotes judicial economy because cases reach resolution more quickly due to less discovery and no litigation over the scope that discovery which is inevitable based the typical breadth of plaintiffs' requests. (*See* Section II, *infra*, comparing

3

*Almodovar/Negron* to *Solache/Reyes*). On the other hand, non-bifurcated *Monell* claims involve significant written, oral and expert discovery, particularly in a case like this one where the events took place nearly 40 years ago, and the attendant motion practice regarding the scope of the discovery. By contrast, the §1983 claims and corresponding discovery against the Defendant Officers are straightforward and allow the parties to focus on the facts of the case. And of course, Plaintiff is required to prove that *his* constitutional rights were violated at trial before he can establish any *Monell* liability. And, even if he was able to establish *Monell* liability, he is not entitled to any additional compensatory damages. Plaintiff very likely intends to use *Monell* discovery at trial to confuse the jury with allegations of abuse in unrelated cases rather than prove his own allegations of constitutional violations, which, of course, unfairly prejudices City and Defendant Officers.

In accordance with the common-sense, pragmatic values embodied in Rule 42(b), Defendants move this Court to stay discovery and postpone trial on Plaintiff's *Monell* claim to focus discovery and resolution of the claims against Defendant Officers on the claimed underlying constitutional violations.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The party seeking bifurcation need only show that separating the trial would either promote judicial economy *or* prevent prejudice. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (emphasis added). "Only one of these criteria – avoidance of prejudice or judicial economy – need be met before a court can order separation." *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999). Although the non-

moving party's Seventh Amendment right to a jury trial must not be impaired by the decision to bifurcate or result in unfair prejudice, district courts enjoy "considerable discretion to order the bifurcations of a trial[.]" *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Should bifurcation be warranted, Rule 26 of the Federal Rules of Civil Procedure allows the court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *Jones v. City of Chicago,* 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999).

"Motions to bifurcate *Monell* claims are frequently granted in this District because such claims typically require a significant amount of work – including expert discovery – that may ultimately be for naught because in 'many, if not most cases, disposition of the individual claims will either legally or practically end the litigation.'" *Bradford v. City of Chicago,* 2019 WL 5208852, at *2 (N.D. Ill. Oct. 16, 2019) (*citing Medina v. City of Chicago,* 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000)). "[I]f the plaintiff prevails on his constitutional claim against the municipal employee, he is 'likely not to want or need to proceed any further,' because Illinois law requires a 'local public entity to pay … any tort judgment or settlement for compensatory damages … for which it or an employee while acting with the scope of his employment is liable.'" *Id.* (*citing Medina,* 100 F. Supp. 2d at 895; 745 ILCS 10/9-102) (citations omitted). Accordingly, by first litigating the claims against Defendant Officers, the parties may never need to litigate the *Monell* claims, thus conserving the resources of both the parties and the court. *See Jones,* 1999 WL 160228, at *2.

## ARGUMENT

Bifurcation of Plaintiff's *Monell* claim best serves the Rule 42 interests of convenience, economy, expedition, and avoidance of undue prejudice. It also represents a sound exercise of the Court's inherent power to control its docket. *Krocka,* 203 F.3d at 516. Further, Defendant City

would agree to an entry of judgment against it for compensatory damages and, to the extent allowed by the Court, reasonable attorneys' fees, if the finder of fact determines a named Defendant Officer violated Plaintiff's constitutional rights in one of the ways alleged in the complaint. *See* Limited Consent to Entry of Judgment Against Defendant City (hereinafter "Consent Judgment"), attached as Exhibit A, at ¶4. Accordingly, bifurcation and a subsequent stay of the *Monell* claims is a sensible decision favorable to all parties.

## I. *MONELL* LITIGATION IS UNNECESSARY WHETHER PLAINTIFF SUCCEEDS OR FAILS ON THE CLAIMS AGAINST THE INIDIVIDUAL OFFICERS.

### A. There is no *Monell* liability unless Defendant Officers are found liable.

A plaintiff generally cannot demonstrate a municipality is liable under *Monell* without first proving that an individual employee violated a person's constitutional rights. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Matthews v. City of E. St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012) (holding that without a constitutional violation, there can be no *Monell* liability). Here, it is not possible for a jury to find *Monell* liability against the City without first finding Defendant Officers liable because of the nature of the constitutional violations alleged. Indeed, Courts in this district have granted motions to bifurcate *Monell* claims in cases where the plaintiffs allege the same constitutional violations as Plaintiff alleges here. *See Mitchell v. City of Chicago,* 2019 U.S. Dist. LEXIS 231746 (N.D. Ill. Sept. 18, 2019) (Feinerman, J) (allegations of fabricated confessions required establishing individual liability against the individual officers), attached hereto as Exhibit B; *Williams v. City of Chicago*, 2018 WL 2561014, at \*11 (N.D. Ill. June 1, 2018) (coerced testimony, false reports, and withholding evidence in files depends on individual officer actions); *Andersen v. City of Chicago*, 2016 WL 7240765, at \*4 (N.D. Ill. Dec. 14, 2016) (the City's alleged practice of maintaining clandestine files could only manifest itself if the defendant officers maintained such files); *Harris v. City of Chicago,* 2016 WL 3261522 (N.D. Ill.

June 14, 2016) (Darrah, J) (the alleged *de facto* policies regarding coercive interrogations, fabricating evidence, failure to train, and code of silence depended on the individual officers' actions); *Veal v. Kachiroubas*, 2014 WL 321708, at *3 (N.D. Ill. Jan. 29, 2014) (municipal liability in case alleging falsification of evidence depends on establishing individual defendant officers violated plaintiff's civil rights); *Clarett v. Suroviak,* 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011) (municipal liability in suit alleging false arrest and unreasonable seizure depends on establishing individual defendants violated plaintiff's constitutional rights).[1] In a previous case involving both Detective Guevara and the same alleged constitutional violations, including nearly identical City policy allegations as this case, Judge Shah ruled that all the constitutional violations alleged by the plaintiffs required culpability by the individual officers. (*See* Transcript of Motion to Bifurcate ruling in consolidated cases *Montanez v. Guevara*, 17-CV-4560, and *Serrano v. Guevara* 17-CV-2869 from March 19, 2019, attached hereto as Exhibit C, at 6:7-8:15).

While the Seventh Circuit has recognized rare circumstances in which a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a "factually distinct" *Monell* claim, those unique circumstances are not present here. *See, e.g., Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293 (7th Cir. 2009). In determining whether *Monell* liability can stand absent a finding of individual liability, *Thomas* instructs the relevant factors to consider are "[1] the nature of the constitutional violation, [2] the theory of municipal liability, and [3] the defenses set forth." *Id.* at 305; *see also Veal*, 2014 WL 321708, at *3; *Readus v. Dercola*, 2012 WL 1533167, at *2 (N.D. Ill. 2012). Those factors weigh in favor of bifurcation.

---

[1] *See also Arrington v. City of Chicago,* 2018 WL 3861552, at *1 (N.D. Ill. Aug. 14, 2018) (finding "judicial economy weighs in favor of bifurcation" in an excessive force case); *Ackerman v. Allen,* 2017 WL 1536447 (N.D. Ill. Apr. 27, 2017) (Castillo, CJ.).

Regarding the first and second *Thomas* factors, Plaintiff's *Monell* claim is wholly derivative of the alleged constitutional violations committed by Defendant Officers, as Plaintiff makes clear in his Amended Complaint, meaning it is impossible for the *Monell* claim to be factually distinct from the individual officer claims. *See* Dkt. 62, AC, Count VI; and *see, e.g.,* ¶198 ("The actions of all of the individual Police Officer Defendants were done pursuant to policies and practices of the Chicago Police Department[.]"). For instance, Plaintiff's claim that the City allegedly had a *de facto* policy of fabricating or concealing evidence cannot be sustained unless it is determined that Defendant Officers fabricated or concealed evidence in violation of Plaintiff's due process rights. Likewise, whether the City had a lax disciplinary system is inconsequential unless Defendant Officers committed some unconstitutional misconduct in this case. The same is true for coercing criminal suspects; if Defendant Officers did not commit the violation, then the City cannot be held liable under a *Monell* theory. None of these *Monell* claims are viable unless the jury first finds that Defendant Officers violated Plaintiff's constitutional rights. Thus, unlike *Thomas*, but directly on point with *Heller*, even if the City had the policies and practices Plaintiff alleges, such as fabricating and manipulating witness testimony, or withholding exculpatory evidence, "the harm caused by the practice could only manifest itself through the officers' actions." *See Williams*, 2018 WL 2561014, at \*11; *see also Sopron v. Cassidy,* 2023 WL 6213713, at \*5 n.3 (N.D. Ill. Sept. 22, 2023) (Noting in a factually analogous case that "[*Heller*] likely governs because *Thomas* created a *narrow* exception to the rule that municipal liability is contingent on officer liability [as] *Thomas* only applies when the *Monell* claim is 'factually distinct' from the claims against the individual officers.") (Kness, J.); Ex. C, *Serrano/Montanez* at 6:17-22 ("If the individual defendants put exculpatory evidence in a street file, but did nothing to disclose it to the prosecutors, they violated *Brady*, even if the City's practice of failing to disclose street files and

City's practice of having insufficient or ineffective subpoena compliance also caused the non-disclosure"); *Taylor v. Kachiroubas*, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013) ("the actions of the individual officers in collecting and fabricating evidence against [plaintiffs] are the source of the alleged harm to the plaintiffs, and any 'policy' exerted harm through those actions, not independently of them"); *cf., Mendez v. City of Chicago,* 2020 U.S. Dist. LEXIS 52418, at *9-12 (N.D. Ill Mar. 26, 2020) (Kim, MJ) (attached hereto as Exhibit H) (denying bifurcation, in part, because *Monell* claim on a theory of excessive force did not overlap with §1983 claims of illegal search and false arrest against individual defendant officers). Thus, the nature of the constitutional violations alleged and Plaintiff's alleged theory of municipal liability establishes that Plaintiff's *Monell* claim is not factually distinct from the claims against Defendant Officers and, under *Thomas,* municipal liability cannot stand absent a finding of individual liability.

As to the third *Thomas* factor, defenses, Defendant Officers will argue no such constitutional violations occurred, and the City will argue no such *de facto* policies existed. Because the constitutional violations Plaintiff alleges are not dependent on Defendant Officers' subjective mental state, it does not leave open the possibility for the same types of defenses that were successful for the individuals in *Thomas*. *See Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1037 (N.D. Ill. 2017) (reasoning that in *Thomas*, as well as other cases where the court denied bifurcation, the claims alleged required an analysis as to the defendant's state of mind; "here, the constitutional violation occurs regardless of the mental state of the officers").[2] As a result, there is no defense foreseeable in this case that cuts against bifurcation. And even so, "*Thomas* addressed whether a municipality could ever be held liable under *Monell* when individual defendants were

---

[2] Plaintiff's other Section 1983 claims, Failure to Intervene and Conspiracy, are all derivative and contingent upon a finding that one of the Defendant Officers violated Plaintiff's constitutional rights. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (failure to intervene); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy).

found liable for the underlying episode – not whether that liability should be established in a single trial or separately…[r]egardless, the *Heller*-or-*Thomas* issue can be revisited after the Individual City Defendants' potential liability is resolved at the first trial." *Sopron,* 2023 WL 6213713, at *5.

Any concern regarding Defendant Officers' assertion of the qualified immunity defense is addressed by the Consent Judgment, which allows judgment to be entered against the City in the event of a finding that any of the Defendant Officers violated Plaintiff's constitutional rights but are nonetheless entitled to qualified immunity. (*See* Ex. A). In other words, the success of the qualified immunity defense would not act to bar Plaintiff's recovery of compensatory damages on the constitutional claims, nor would it require a second trial on the *Monell* claim. *See infra, Section B;* s*ee, e.g.*, *Castillo v. City of Chicago*, 2012 WL 1658350, at *5 (N.D. Ill. May 11, 2012) (bifurcating discovery and trial on *Monell* claim because municipality agreed to pay damages if any of the defendant officers violated plaintiff's constitutional rights or if the defendant officers prevailed based on a qualified immunity defense).

Because there is no way that a jury could find the City liable without first finding Defendant Officers liable, this factor weighs in favor of bifurcation. *See,* Ex. B, *Mitchell*; Ex. C, *Serrano/Montanez* at 6:7-8:1; *Andersen,* 2016 WL 7240765, at *3; *Harris,* 2016 WL 3261522, at *3; *Veal,* 2014 WL 321708, at *3; *Taylor,* 2013 WL 6050492, at *4.

### B. The City's indemnification of Defendant Officers and Consent Judgment obviates the need for any further proceedings if Plaintiff prevails against the Defendant Officers.

If, on the other hand, Defendant Officers are found to have violated Plaintiff's constitutional rights, bifurcation of Plaintiff's *Monell* claims will not affect Plaintiff's recovery of *any* compensatory damages that a jury may award him. First, the City will consent to entry of a judgment against it for the damages caused by the violation, plus reasonable attorneys' fees, without requiring Plaintiff to prove the elements of Section 1983 for municipal liability. *See,* Ex.

A, at ¶4. This is no small benefit to Plaintiff as "the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of…proof." *Medina,* 100 F. Supp. 2d at 894. The Consent Judgment allows Plaintiff to obtain a judgment against the City for all the compensatory damages he is entitled to as long as he proves his constitutional rights were violated, thereby avoiding altogether litigation of the *Monell* claim. This would be true even if Defendant Officers successfully asserted a qualified immunity defense on the grounds that the offending conduct did not violate a clearly established right. *See,* Ex. A, at ¶5.

Thus, given the provisions of the Consent Judgment, "disposition of the individual claims will either legally or practically end the litigation … [i]f the plaintiff prevails against the officers on his Section 1983 claim, he is likely not to want or need to proceed any further …" *Medina,* 100 F. Supp. 2d at 895. To the extent that a successful *Monell* claim serves to ensure payment of damages to Plaintiff, as appropriate, the Consent Judgment achieves that goal.

As Judge Tharp noted in *Kitchen,* "[t]he express premise of the City's motion is not that the *Monell* claim will *necessarily* fall by the wayside, but that there is a good chance that it may – either because the individual defendants are found not to have violated plaintiff's rights, or if they are found to have done so, because the plaintiff concludes that the verdict, and the accompanying damage award, are sufficient after all." *Kitchen v. Burge,* 2012 U.S. Dist. LEXIS 158088, at *17-18 (N.D. Ill. Nov. 2, 2012), attached hereto as Ex. D (emphasis in original).

The City has both a statutory and a contractual obligation to indemnify Defendant Officers for any judgment against them, and as a matter of law, if Plaintiff is awarded damages against Defendant Officers, Plaintiff is not entitled to any additional recovery of compensatory damages against the City, even if he is successful in proving *Monell* liability. *See,* 745 ILCS 10/9-102; *see also Spanish Action Comm. of Chicago v. City of Chicago,* 766 F.2d 315, 321 (7th Cir. 1985);

*Medina,* 100 F. Supp. at 895-96 ("[F]rom an economic standpoint, a prevailing plaintiff in a Section 1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers…[a]s a result, plaintiffs generally chose to forego the more difficult route of seeking to hold the municipality liable under *Monell*"). Thus, Plaintiff has no economic incentive to proceed against the City.

Moreover, any argument that there are non-monetary benefits to pursuing *Monell* claims are not persuasive here. *See Sopron,* 2023 WL 6213713, at \*5 ("Plaintiffs contend that their 'profound non-economic' interest in getting 'a judgment naming the City itself and holding it responsible for its policies' requires a single trial, but nothing about the decision to bifurcate will frustrate that goal.") (citations omitted). Though plaintiffs frequently claim they are pursuing *Monell* claims for policy changes, Plaintiff is not seeking any equitable relief, such as an injunction or declaratory judgment (and nothing prevented him from seeking such relief). *See* Ex. C, *Serrano/Montanez,* at 8:16-9:5. Moreover, the alleged policies at issue in this case are decades old (the Mena Murder occurred in 1985), and many changes have occurred in the intervening years (*e.g.,* the Consent Decree). And, without any actual relief to be had, Plaintiff pursuing *Monell* claims like these "does not justify the time and expense of litigating them when the City will make Plaintiff whole and accept judgment against it if their rights were violated." Ex. C at 8:25-9:2. Thus, any purported non-economic benefits to pursuing Plaintiff's *Monell* claim do not tip the balance against bifurcation. *See Williams*, 2018 WL 2561014 at \*14 (a large judgment against the officers would presumably send the same message to the City to deter future official misconduct).

## II.     BIFURCATION WILL PROMOTE EFFICIENCY AND JUDICIAL ECONOMY.

With virtually no added benefit to litigating the *Monell* claim, the extreme and unnecessary burden *Monell* discovery places on the City, the Court, and third-parties including the Cook

County State's Attorney's Office ("CCSAO") and Cook County Public Defender's Office ("CCPDO") further supports bifurcation and a stay of discovery and trial. *See Veal*, 2014 WL 321708, at \*5; *Taylor,* 2013 WL 6050492, at \*3; *Ojeda-Beltran v. Lucio,* 2008 WL 2782815, at \*2 (N.D. Ill. July 16, 2008). Proving municipal liability claims can be "extensive and expensive," *Taylor,* 2013 WL 6050492, at \*3, which has led to the "willingness of many judges to grant [motions to bifurcate *Monell* claims]." *Veal*, 2014 WL 321708, at \*5 (citations omitted). The Seventh Circuit has explicitly endorsed bifurcation to avoid "the waste of the valuable time and resources of the court," as well as serving the interests furthered by Rule 42(b). *See Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). This is particularly true considering Plaintiff cannot recover additional damages by succeeding on his *Monell* claim. *See Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) (A §1983 plaintiff cannot recover from the City after being compensated for that constitutional violation against the officers because federal common law prevents §1983 plaintiffs from recovering twice for the same injury). As Judge Shah reasoned, "just because plaintiffs can resort to Section 1983 and *Monell* liability doesn't mean that that theory is always a good use of resources. Rules 1 and 42 contemplate that courts should try to bring costs and time down", and *Monell* discovery is likely to be "contentious" and "time-consuming." *See* Ex. C, *Serrano/Montanez*, at 9:12-18.

Here, Plaintiff has alleged numerous City policies and practices that caused his purported constitutional injuries. Dkt. 62, Count VI. To prevail against the City, Plaintiff must adduce evidence that these alleged municipal policies and practices were enduring, widespread practices that violated constitutional rights in a systematic manner. *See Cornfield by Lewis v. Consol. High Sch. Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993); *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 511 (7th Cir. 1993). In addition, Plaintiff must establish that the City's final policymaker

was deliberately indifferent to the various deficient municipal practices alleged by Plaintiff – a demanding task. *See Palka v. City of Chicago,* 662 F.3d 428, 434 (7th Cir. 2011) (requiring notice and "tacit approval" of the unconstitutional practice.)

Here, Plaintiff has requested "homicide files" maintained in the CPD from 1983 to 1993, which would include all investigative files and Records Division files ("RD Files") for an eleven-year period of time. Ex. E, Plaintiff's First Requests for Production, ¶82. A review of CPD Annual Reports for the relevant time period indicate that there were over 8500 homicides during this timeframe.[3] Plaintiff has also requested Complaint Register files ("CR Files") "for the entire [CPD] from 1983 through 1993." *Id.* at ¶83. The same CPD Annual Reports indicate there were over 100,000 complaints made against CPD employees during this timeframe which means there over 100,000 CR files initiated (which would require the production of millions of pages of documents). Additionally, Plaintiff has requested a litany of "policies, procedures, general orders, special orders, directives, standard operating procedures, training materials and/or employee manuals" related to a variety of topics including but not limited to interrogations, memorialization of statements, subpoena compliance, *Brady* obligations, etc. *Id.* at ¶¶85-88.

Plaintiff may argue that the discovery requested here will overlap with other cases, but that would be untrue because the Mena Murder happened five years before any other Guevara-related case where similar-type files have been produced (the murder closest in time in a Guevara case is the 1990 murder in *Maysonet*). The City has not produced investigative files, RD Files, or CR Files from 1985 and earlier. Thus, all *Monell* production of these files would be brand new.

But much more discovery is necessary. For instance, to prove his *Monell* theory that the City had a policy and practice of concealing documents from criminal defendants, the parties will

---

[3] https://home.chicagopolice.org/statistics-data/statistical-reports/annual-reports/

need to subpoena the CCSAO and CCPDO for their files that correspond with the investigative files and RD Files. That is, because there is no way to know if documents were not turned over to either the prosecutors or criminal defendants without comparing the investigative files and RD Files to the CCSAO/CCPDO files. Thus, two public, third-party entities (with limited public funding as it is) will be required to spend significant resources on this one lawsuit. The past shows us that these entities will be subpoenaed, will each attempt to quash the subpoenas, then if the motions are denied, will spend significant time and money searching for the files, scanning the files, reviewing each page of each file to redact privileged information (potentially creating long privilege logs), and producing the files.[4] Then each party will need to review the files, potentially code each file, and then each party will hire multiple experts to analyze and provide opinions on the files, which also adds many months of time obtaining the reports and deposing the experts. And, as the past has shown, the CCSAO and CCPDO will not have many of the files and/or the files they do have will be incomplete and missing large swaths of documents, meaning they are useless to both parties because the parties cannot compare the investigative files and RD files to the CCSAO/CCPDO files to meaningfully determine if documents are missing. This, of course, then questions the completeness of all files produced by the CCSAO and CCPDO, and Plaintiff's *Monell* claim of concealing evidence as a whole.

There are real life examples from previously filed Guevara cases that show that bifurcation is the sensible approach. In the consolidated cases *Almodovar/Negron*,[5] the court granted bifurcation, while in the consolidated cases *Solache/Reyes*,[6] the court denied bifurcation.

---

[4] *See, e.g.,* City's Motion for Protective Order to Prevent Undue Strain on Resources of Public Entities for Speculative Monell Discovery, filed in *Reyes v. Guevara,* 18-CV-1028 (N.D. Ill.), Dkt. 503, and also from *Reyes*, the CCSAO's Motion to Quash the City's subpoena for corresponding *Monell* files, Dkt. 455.

[5] *Almodovar v. Guevara,* 18-CV-2341; *Negron v. Guevara,* 18-CV-2701.

[6] *Solache v. Guevara,* 18-CV-2312; *Reyes v. Guevara,* 18-CV-1028.

*Almodovar/Negron* were filed in April 2018; *Solache/Reyes* were filed in February and March 2018. (*Almodovar* Dkt. 1; *Negron* Dkt. 1; *Solache* Dkt. 1; *Reyes* Dkt. 1).[7] Both sets of cases name Guevara and other police officers as defendants, both have nearly identical *Monell* claims, and both are reversed conviction murder cases stemming from murders in the 1990s. In *Almodovar/Negron*, summary judgment has been fully briefed on the individual officer claims since March 17, 2023. (*Almodovar* Dkt. 241). There is still no summary judgment schedule in *Solache/Reyes* as discovery did not end until June 30, 2023 (*Reyes* Dkt. 655), undoubtedly because the extra *Monell* discovery, including multiple extra *Monell* expert reports and depositions caused by non-bifurcation.[8] In *Almodovar/Negron*, each side disclosed two retained experts for a total of four, while in *Solache/Reyes*, each side disclosed five retained experts for a total of ten experts. In *Almodovar/Negron*, the City produced 8,600 pages of documents, while in *Solache/Reyes*, the City produced approximately 120,000 pages of documents. In *Almodovar/Negron*, there was *no* litigation or filings related to *Monell* discovery (no motions on *Monell* vs. non-*Monell* discovery), while in *Solache/Reyes* the parties had approximately 41 filings related to *Monell* discovery.[9] Further, three other Guevara cases filed around the same time in 2018 were not bifurcated, and only one has even begun summary judgment briefing (*Sierra*), almost a full year after *Almodovar/Negron* was fully briefed.[10]

---

[7] Since the dockets in each of the respective consolidated cases are very similar, Defendants will refer to the *Reyes* docket when referring to *Solache/Reyes*, and the *Almodovar* docket when referring to *Almodovar/Negron*.

[8] Defendants note that there was a reopening of limited fact discovery on a narrow issue.

[9] *See Reyes* Dkt. 178, 184, 195, 211, 212, 220, 222, 231, 272, 280, 290, 293, 295, 356, 368, 424, 430, 446, 447, 449, 455, 468, 472, 476, 480, 485, 500, 503, 509, 523, 525, 528, 532, 538, 543, 552, 562, 564, 569, 576, and 579.

[10] *Maysonet v. Guevara,* 18-CV-2342, Dkt. 1 (Complaint filed 4/1/18); *Sierra v. Guevara,* 18-CV-3029, Dkt. 1 (Complaint filed 4/30/18); and *Gomez v. Guevara,* 18-CV-3335, Dkt. 1 (Complaint filed 5/10/18).

*Monell* discovery is time-consuming, costly, and as explained further above, because the *Monell* litigation provides no further tangible benefit to Plaintiff, incredibly wasteful. By way of example, the City has conducted *Monell* discovery and trials in two recent cases involving similar *Monell* claims as those alleged here. In *Fields, Monell* discovery of homicide investigative files *alone* took about 17 months at a cost in excess of $1,500,000.00. *See* City's Response to Plaintiff's Motion to Compel *Monell* Discovery in *Prince v. Kato,* attached hereto as Exhibit F, pp. 5-6. Similarly, in *Rivera, Monell* discovery added at least a year to the discovery at a cost more than $1.1 million. *See* City's Response Position Regarding *Monell* Discovery in *Sierra v. Guevara,* attached hereto as Exhibit G at pp. 9-10. And, unlike Plaintiff here, the plaintiffs in those cases did not pursue *Monell* discovery related to any failure to supervise and discipline – specifically, those plaintiffs did not request years of CR files for non-defendant police officers. To illustrate the potential wastefulness of *Monell* discovery, in the consolidated cases of *Hood v. City of Chicago,* 16-CV-1970 (N.D. Ill.) and *Washington v. City of Chicago,* 16-CV-1893 (N.D. Ill.), the City was required to produce over 1,000 CR files, which took the City over a year to produce and cost the taxpayers almost $95,000 to simply scan, redact, and produce the files.[11] Then, the trial was bifurcated because of the prejudice of the *Monell* evidence to Defendant Officers, and all the time and expense of *Monell* discovery was for naught as the case settled before trial against the individual officers. *See Washington v. Boudreau,* 16-CV-1893, 2023 WL 184239, at *6 (N.D. Ill. Jan. 13, 2013). As an example of the potential upside of bifurcating *Monell* discovery and trial, in *Bishop v. City of Chicago,* 16-CV-6040, the *Monell* claim was bifurcated, and during discovery on the underlying claim, the defense uncovered evidence of Plaintiff's misconduct during the litigation, which resulted in the case being dismissed with prejudice as a sanction, thus, avoiding

---

[11] This figure does not include attorney review time or any costs related to *Monell* expert discovery.

significant resource expenditure by the parties and the Court. *Bishop v. White,* 2023 WL 35157 (N.D. Ill. Jan. 4, 2023).

Considering the broad *Monell* allegations in Plaintiff's Complaint, bifurcation is particularly well-suited in this case. The potential discovery related to each of these various topics is extensive and goes back decades. Putting aside the questionable merit to many of these alleged *Monell* issues, the number and type of documents and depositions that arguably fall within the scope of the discovery will be unduly burdensome and preparing responses will be expensive and time-consuming. *See* Ex. C, *Serrano/Montanez*, at 5:22-6:6. (finding that granting bifurcation will expedite and economize the cases); *Ojeda-Beltran*, 2008 WL 2782815, at *3 ("[L]itigation of the *Monell* claim is likely to require a considerable investment of resources on the part of the parties and the Court outside of those required for the resolution of the claims against Defendant Officers. We find it prudent to resolve the claims against Defendant Officers before engaging in costly and time-consuming litigation of the *Monell* claim.").

Quite simply, considering that discovery on this claim may ultimately be unnecessary to resolve Plaintiff's claim, there is no reason to burden the parties with litigating such exhaustive discovery and conducting a potentially unnecessarily long trial.

## III.   BIFURCATION WILL PREVENT UNDUE PREJUDICE TO DEFENDANTS.

A single trial of the claims against Defendant Officers along with the *Monell* claims against the City will severely prejudice all Defendants, while bifurcation of the *Monell* claim protects all Defendants from the inevitable prejudice caused by the introduction at trial of evidence relating to numerous claims of alleged police misconduct that are not related to Plaintiff's case. "Plainly, the presentation of evidence relating to the wide-ranging allegations of the plaintiff's *Monell* claim create[s] a substantial risk of prejudice for the individual defendants and undermines the ability of

those defendants to receive a fair trial." Ex. D, *Kitchen,* 2012 U.S. Dist. LEXIS 158088, at *23.

Indeed, Judge Kness has recently bifurcated four cases (as recently as September 2023), making it

very clear that based on his experience, it is nearly impossible to avoid significant prejudice to

defendant officers if the *Monell* claim is tried with the underlying claim:

> [T]he risk of unfair prejudice to Defendants justifies bifurcation. Plaintiffs seek to
> admit decades of evidence concerning a number of issues unrelated to the Section
> 1983 claims. It is possible, perhaps probable, that a jury would, by association,
> impermissibly tag the Individual City Defendants and the City with unjustified
> accountability after having been presented with evidence to that effect. *See Dollard
> v. Whisenand,* 946 F.3d 342, 359 (7th Cir. 2019) ("[T]he concept of guilty by
> association is repugnant to our notion of elemental justice and far play.").
>
> \*\*\*
>
> Because of the potentially inflammatory evidence and the nuanced difference
> between *Monell* and respondeat superior liability, this case presents the situation
> where there is substantial risk that limiting instructions may be insufficient to
> ameliorate the potential prejudice to Defendants.

*Sopron,* 2023 WL 6213713, at *4. Judge Kness also bifurcated the *Hood/Washington* trial due to

the potential of unfair prejudice to Defendants*. See Washington v. Boudreau,* 16-CV-1893, 2023

WL 184239, at *6 (N.D. Ill. Jan. 13, 2013) (Noting that the Burge era is "notorious and lurid," and

that the "case presents one of those perhaps rare occasions where, in the Court's view, limiting

instructions and stipulations [regarding the Burge evidence] are insufficient to ameliorate the

potential prejudice to Defendants.").

It is very likely that Plaintiff will try this case by drawing the jury's attention away from

the facts and circumstances of the case by presenting evidence of alleged police misconduct in

other cases. This presentation of broad evidence of the City's alleged customs and practices would

be unduly prejudicial and would likely cause significant juror confusion. Accordingly, Plaintiff's

*Monell* claim should be bifurcated from his other claims. *See,* Ex. C, *Mitchell,* at p. 2; *Fuery v.
City of Chicago,* 2015 WL 715281, at *3 (N.D. Ill. Feb. 17, 2015) (bifurcating *Monell* claim that

would "draw the jury's attention away from resolving the underlying issues of an incident that

occurred over seven years ago" and "make the case more complicated and potentially cause juror confusion"); *Veal,* 2014 WL 321708, at *6 ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating a perception that the police department routinely acts improperly, even if those officers acted properly in this case."); *see also,* Ex. D, *Kitchen,* at *24 (granting bifurcation and reasoning that it would "ensure that the individual defendants are not prejudiced unfairly by the presentation of evidence that does not relate to the violations that are alleged to have been committed.")

Moreover, there is a heightened risk of prejudice against the City if the claims are tried with a single trial. *Monell* and its progeny provide Plaintiff with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality liable through a form of vicarious liability like *respondeat superior. EG Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir. 2011) ("There is no *respondeat superior* liability under Section 1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of the *employees* of the municipality.'" (*quoting Prembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)). A jury asked to weigh evidence of individual employee misconduct and policy evidence may conflate the broad evidence on *Monell* liability as proof of the City's derivative liability under a *respondeat superior* theory. Especially when Plaintiff will seek to admit decades of evidence concerning other misconduct. *See Washington*, 2023 WL 184239, at *6 ("On the merits, the risk of unfair prejudice to Defendants justifies bifurcation of [Plaintiffs'] *Monell* claims. [They] seek to admit decades of evidence concerning the established misconduct of Burge and his associates."). Moreover, "limiting instructions and stipulations [will be] insufficient to ameliorate the potential prejudice to Defendants." *Id.*

The claims against Defendant Officers here are largely fact-specific and focus on the murder and police investigation, while the claims against the City are highly complex, requiring years of homicide files (and not just from the City, but other public agencies like the CCSAO and CCPDO), disciplinary files, and policies, as well as discovery into completely unrelated non-defendant officers, which will also require significant motion practice and conferrals on the scope, relevance, and burdensome of the discovery. The serious allegations against Defendant Officers, if proven at trial, may cause the jury to hold the City liable on the *Monell* claim without giving the claim due deliberation and contemplation. This risk of unfair prejudice is easily avoidable by bifurcating the *Monell* claim from the claims against Defendant Officers, thereby ensuring that there would be no concern about misapplication of the law to the available evidence. In fact, the Honorable Judge Durkin found the risks that "*Monell* would devolve into a *respondeat superior* claim" to not only be "compelling" but one that "counsels in favor of bifurcation." *Bradford, 2019 WL 5208852,* at *4.

## CONCLUSION

WHEREFORE, Defendants City of Chicago, Reynaldo Guevara, Geri Lynn Yanow, as special representative of Ernest Halvorsen, deceased, Edwin Dickinson, Michael O'Grady, Jean Moreth, and Lee Epplen respectfully requests this Court grant this Motion to Bifurcate Plaintiffs' §1983 *Monell* claims against the City of Chicago and stay both discovery and trial on the *Monell* claims, and any other further relief this Court deems just and proper.

DATED:     February 9, 2023                          Respectfully Submitted,

*/s/ Allison Romelfanger*                              */s/ Austin G. Rahe*
*One of the Attorneys for Defendants*           Special Assistant Corporation Counsel
*Halvorsen, Dickinson, O'Grady, Moreth, and*   *One of the Attorneys for City of Chicago*
*Epplen*

Josh Engquist                                         Eileen E. Rosen
                                                      Catherine M. Barber

Allison L. Romelfanger
Lisa Meador
The Sotos Law Firm, P.C.
141 W. Jackson Blvd, #1240A
Chicago, Illinois
630-735-3303
jengquist@jsotoslaw.com

Theresa B. Carney
Austin G. Rahe
Lauren M. Ferrise
Rock Fusco & Connelly, LLC
333 W. Wacker, 19th Floor
Chicago, Illinois 60606
(312) 474-1000
erosen@rfclaw.com

*/s/ Timothy P. Scahill*
*One of the Attorneys for Defendant Guevara*

Steven B. Borkan
Timothy P. Scahill
Emily E. Schnidt
Graham P. Miller
Misha Itchhaporia
Molly Boekeloo
Whitney Newton Hutchinson
Borkan & Scahill, Ltd.
20 S. Clark St., Suite 1700
Chicago, Illinois 60603
312-580-1030
eschnidt@borkanscahill.com