## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **REYNALDO MUNOZ,** | ) | |
| | ) | **No. 23 CV 3210** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **REYNALDO GUEVARA, *et al*.** | ) | |
| | ) | **April 7, 2025** |
| **Defendants.** | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiff Reynaldo Munoz alleges that six police officers ("Defendant Officers") violated constitutional and state laws when arresting, prosecuting, and convicting him for the 1985 murder of Ivan Mena and attempted murder of Bouvier "Bobby" Garcia, causing Plaintiff to spend 30 years behind bars. Plaintiff also brings a *Monell* claim against the City of Chicago (the "City") alleging it failed to train, supervise, and discipline Defendant Officers and endorsed policies, practices, and customs that led to the prosecution of innocent individuals like him.

Before the court are Plaintiff's and Defendant Officers' motions to compel subpoena respondent Cook County State's Attorney's Office ("CCSAO") to produce information it has withheld based on work product ("WP") doctrine, deliberative process privilege ("Privilege"), and personal identity information ("PII") and LEADS data ("LEADS") objections. For the following reasons, the motions are granted as to all documents listed on CCSAO's privilege log ("Privilege Log"), except that CCSAO

may redact PII prior to production of the withheld documents only as allowed by the Confidentiality Order) and may withhold Document CCSAO_001471 in its entirety:

## Background

The State of Illinois moved to dismiss charges against Plaintiff in the underlying criminal action ("Underlying Action") in August 2022 and awarded him a certificate of innocence in March 2023. (R. 62, Am. Compl. ¶¶ 14-15.) Plaintiff brought this case shortly thereafter. (See generally R. 1, Compl.) On October 4, 2023, Defendant Officers issued a subpoena to CCSAO ("Officers' Subpoena"), seeking documents related to the prosecution file from the Underlying Action, including police reports, felony review materials, physical evidence, witness statements, investigators' materials, and court records. (R. 160, Def. Officers' Mot. at 3 & Ex. A (Officers' Subpoena).) In response, CCSAO produced documents on January 12, 2024, but withheld certain information based on the asserted protections. (Id. at 3 & Exs. B (CCSAO's Priv. Log), C (Redacted Docs.).) CCSAO supplemented its production on February 14 and December 30, 2024, producing Plaintiff's recorded interview and grand jury and medical records. (Id. at 3.)

Plaintiff issued his own subpoena to CCSAO on September 20, 2024 ("Plaintiff's Subpoena"), requesting many of the same documents Officers' Subpoena sought. (R. 157, Pl.'s Mot. at 2 & Ex. C (Pl.'s Subpoena); see also R. 171, CCSAO's Consol. Resp. at 2 (agreeing that the subpoenas "duplicate one another").) Plaintiff then conferred with CCSAO to determine whether CCSAO would disclose to him its productions and Privilege Log. (R. 157, Pl.'s Mot. at 2-4.) CCSAO sent Plaintiff the

requested documents in the same form produced to Defendant Officers on November 7, 2024, and supplemented its production on December 30, 2024. (Id. at 3-4.) But Plaintiff complained to CCSAO that the Privilege Log entries lack sufficient detail to assess the validity of the grounds asserted, as required by Federal Rule of Civil Procedure 26(b)(5). (Id. at 3-4 & Ex. D at 9-10, 25-26). CCSAO declined to amend its Privilege Log. (See id. at 4-5.)

Plaintiff and Defendant Officers then moved to compel CCSAO to comply with their subpoenas. (See generally R. 157, Pl.'s Mot.; R. 160, Def. Officers' Mot.) The court held a hearing on January 28, 2025, at which CCSAO indicated that it disputes Plaintiff's and Defendant Officers' challenges to the sufficiency of the Privilege Log. (R. 164.) The court ordered CCSAO to file a consolidated response to the motions, (R. 164), and to email the withheld documents to the court for *in camera* review, (R. 181).

## Analysis

Pursuant to Federal Rule of Civil Procedure 45(d)(1), Plaintiff and Defendant Officers must have "take[n] reasonable steps to avoid imposing undue burden or expense" on CCSAO in serving their respective subpoenas. An entity subject to a subpoena may serve written objections, *id.* at 45(d)(2)(B), and thereafter, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection," *id.* at 45(d)(2)(B)(1). Whether to enforce a subpoena is a "case-specific inquiry" with "no formula for determining reasonableness," and is left to the court's discretion. *Gaines v. Chi. Bd. of Educ.,*

No. 19 CV 775, 2022 WL 1292248, at *2 (N.D. Ill. April 29, 2022) (quotations omitted). Having reviewed the parties' and CCSAO's submissions and inspected *in camera* documents CCSAO emailed to the court, the court finds that CCSAO's objections are largely without merit. Plaintiff's and Officers' Subpoenas therefore are enforced as to all documents listed on CCSAO's Privilege Log except Document CCSAO_001471. The court also permits CCSAO to redact PII to the extent permitted under the Confidentiality Order. (See R. 117 ¶ 6.)

A.     **Privilege Log**

Plaintiff and Defendant Officers argue that CCSAO waived any protection over the withheld documents based on delay or, in the alternative, failed to provide enough detail to allow them to assess the validity of the objections asserted in the Privilege Log. (R. 157, Pl.'s Mot. at 6-9; R. 160, Def. Officers' Mot. at 5-7.) The court rejects Plaintiff's contention that CCSAO has waived asserting WP protection or the Privilege because it did not timely produce its Privilege Log or responsive documents.[1] (R. 157, Pl.'s Mot. at 6.) Although it appears CCSAO had some difficulty producing its first batch of responsive documents to Plaintiff, (see id. Ex. D at 20-26), CCSAO represents that it "properly asked for an extension of compliance," (R. 171, CCSAO's Consol. Resp. at 3), and the court finds no basis to order a blanket waiver based on these circumstances.

---

[1]  In its Privilege Log, CCSAO provides other bases for withholding information requested in Plaintiff's and Officers' Subpoenas, but because those bases do not qualify as valid privileges or immunities, the court declines to address them. (See R. 157, Ex. B.)

4

However, Plaintiff and Defendant Officers' argument concerning the sufficiency of the Privilege Log is persuasive. Under Rule 45, a subpoena respondent asserting privilege "must (1) expressly make the claim and (2) describe the nature of the withheld documents in a manner that will enable the parties to assess the claim." *Walls v. Vasselli*, No. 19 CV 06468, 2022 WL 1004248, at *1 (N.D. Ill. April 4, 2022) (citing Fed. R. Civ. P. 45(e)(2)(A)). To be sure, a privilege log must "identify for *each* separate document . . . the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (emphasis in original) (internal quotations and citations omitted).

As the entity withholding documents, CCSAO bears the burden of establishing that a privilege applies. *See Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020). And "because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Walls*, 2022 WL 1004248, at *2 (citing *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (internal quotations omitted)).

Here, CCSAO fails to satisfy Rule 45(e)(2)(A)(ii) because the Privilege Log does not describe the withheld documents "in a manner that, without revealing information itself privileged or protected," allows the parties to assess the claims.

5

The Privilege Log generally does not include dates of documents, names of individuals who authored or received such documents, or the reasons such documents were created. (See generally R. 157, Ex. B.) As for document descriptions, CCSAO uses vague references such as "ASA [Assistant State's Attorney] Notes: trial tactics," "Email between ASAs evidencing strategy," "ASA Notes: trial preparation," "ASA strategy email," "ASA Notes regarding strategy," "ASA Notes: trial tactics," "CCSAO internal email regarding witness," "Inter-office emails between ASAs [and case analysis]," "Handwritten note," and the like, without providing any context as to the documents withheld. (See id.) As it stands, the parties have no way of knowing whether CCSAO's claims meet the requirements for protection under the WP doctrine or Privilege. Thus, the Privilege Log fails to meet Rule 45(e)(2)(A) requirements. *See Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016) ("A timely and adequate privilege log is required by the federal rules, and the failure to serve [such a] privilege log may result in a waiver of any protection from discovery." (internal quotations and citation omitted)).

## B.    WP & Privilege Objections

Although CCSAO has not satisfied its burden with respect to the Privilege Log, the court nonetheless ordered CCSAO to submit for *in camera* inspection the documents it withheld based on the WP doctrine or Privilege.[2] (R. 181); *see also*

---

[2] The court did not order CCSAO to submit for inspection withheld information allegedly protected only by PII or LEADS, (see R. 157, Ex. B), because neither qualifies as a valid privilege or immunity.

*Belcastro v. United Airlines, Inc.*, No. 17 CV 1682, 2019 WL 1651709, at *5 (N.D. Ill. April 17, 2019) ("[T]he decision concerning the waiver of a privilege based on a privilege log is discretionary."). On March 6, 2025, CCSAO submitted 28 pages of withheld information for the court's inspection ("*In Camera* Documents").[3] (Documents attached to the March 6, 2025 email from ASA David Adelman to proposed_order_kim@ilnd.uscourts.gov sent at 4:58 p.m., copying Alexus Loredo and Sherry Mack.)[4] Having reviewed the *In Camera* Documents, the court confirms that the WP doctrine does not apply, and the Privilege precludes only Document CCSSAO_001471 from production.

### 1. WP Doctrine

Federal law governs the WP doctrine and shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Notably, "while litigation need not be imminent," for the WP doctrine to apply, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (internal quotations and citation omitted). The WP doctrine protects two types of work: (1) an attorney's thought processes and

---

[3] CCSAO lists additional pages in its Privilege Log as allegedly being covered by the WP doctrine or Privilege, (see R. 157, Ex. B), but did not submit such pages to the court for *in camera* inspection. As such, CCSAO waives WP protection or the Privilege over any additional pages not submitted to the court.

[4] CCSAO must preserve this email in the event a review of this ruling is necessary. The court prefers not to file these documents on the docket even under seal.

mental impressions; and (2) an attorney's fact-finding investigation. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010); *see also* Fed. R. Civ. P. 26(b)(3)(B) (stating that the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (explaining that Rule 26(b)(3) "establish[es] a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary" (citation omitted)).

CCSAO argues that the WP doctrine applies to certain *In Camera* Documents, even though those documents relate to a state criminal case arising from a murder and attempted murder that occurred nearly 40 years ago. (See R. 171, CCSAO's Resp. at 6-7.) CCSAO contends that "the civil and criminal cases are sufficiently related" and, therefore, the WP doctrine covers CCSAO's thought processes, mental impressions, and fact-finding investigations—not only in the earlier criminal case but also in this civil case. (Id.) For support, CCSAO cites in part to the Seventh Circuit's decision in *Hobley*, 433 F.3d at 949, in which the court noted that "[a] majority of courts have held . . . that the [WP doctrine] endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related." (R. 171, CCSAO's Resp. at 6.) But when vacating the trial court's discovery sanction in *Hobley*, the Seventh Circuit made clear that "'privilege claims [still] may be tested under the normal procedures for attorney work product.'" 433 F.3d at 952. In other words, the entity

seeking to shield information disclosed in an earlier case must establish that the information was prepared for possible use in the present case. *See id.*

For example, in *Webster Bank N.A. v. Pierce & Associates*, No. 16 CV 2522, 2018 WL 704693, at *4 (N.D. Ill. Feb. 5, 2018), the court confirmed that to qualify for WP protection, the entity seeking such status must show a sufficient nexus between the underlying action and the current one. "The case law makes clear that [the WP] doctrine protects parties from sharing their materials developed for the present case, but not necessarily for an earlier matter. This is because 'the purpose of [WP] privilege is to hide internal litigation preparations *from adverse parties*." *Id.* (emphasis in original). While CCSAO cites *Webster* for the rule that the WP doctrine may apply "where the underlying and present litigation are related," (R. 171, CCSAO's Resp. at 6 (quoting *Webster*, 2018 WL 704693, at *4)), the court there clarified that the key inquiry is "whether, in light of the factual context, 'the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation,'" *Webster*, 2018 WL 704693, at *4. The WP protection thus extends only to "documents prepared because an 'articulable claim' that is 'likely to lead to litigation' has arisen." *Id.*

More recently, this court addressed the same issue presented here, where CCSAO prosecuted the criminal case out of which civil claims arose and asserted the WP protection over prosecution files in the subsequent civil case. In *Williams v. City of Chicago*, No. 22 CV 3773, 2023 WL 6213716, at *3 (N.D. Ill. Sept. 25, 2023), this court "declin[ed] to stray from the clear line of cases holding that 'the work

9

product doctrine does not protect a prosecutor's files in a subsequent, related civil action.'" *Id.* (citing *Hill v. City of Chi.*, No. 13 CV 4847, 2015 WL 12844948, at *2 (N.D. Ill. May 28, 2015) (collecting cases)). As is the case here, CCSAO was not a party to the civil action in *Williams* and did not have an attorney-client relationship with any of the parties in that civil case. *Id.* Accordingly, the court found the WP doctrine inapplicable. *Id.* (citing *Walls*, 2022 WL 1004248, at *2; *Hobley*, 433 F.3d at 949). Notably, CCSAO does not mention *Williams* in its consolidated response. (See generally R. 171, CCSAO's Consol. Resp.)

Erring on the side of caution, the court ordered CCSAO to submit the *In Camera* Documents for inspection in part to determine whether CCSAO prepared them in anticipation of the current litigation. (See R. 181.) The five sets of documents CCSAO submitted for *in camera* inspection clearly were not.[5] The first consists of an email thread dated May 5, 2022, between ASAs Stacia Weber, Joy Tolbert Nelson, Douglas Harvath, Enrique Abraham, and Joseph Alexander, and addresses the statutory term for an individual on bond under Illinois law. (CCSAO_000768 and 000769.) The second is an email thread, exchanged between August 8 and 11, 2022, among ASAs Nelson, Karin Swanson, Renee Thibault, Risa Lanier, Ethan Holland, and Abraham, concerning whether to retry or dismiss the criminal case against Plaintiff. (CCSAO_001453-56.) The third document, titled "Work Product Memorandum," was prepared by ASA Nelson and sent to ASAs

---

[5] Because CCSAO asserts that the WP doctrine and Privilege protect the *In Camera* Documents from disclosure, the court refers to the subject matter of the Documents only to the extent necessary to explain its decision.

Holland, Thibault, and Swanson, and offers a more fulsome analysis of whether to nullify the criminal charges against Plaintiff, with the draft including handwritten notes dated August 5, 2022, and the final version dated August 12, 2022. (CCSAO_001457-71.)  The fourth document, dated February 4, 2008, and titled "MEMO TO FILE," includes ASA Audrey Yang's "legal analysis and mental impressions," (see R. 157, Ex. B at 6), regarding Yang and ASA Molly Brown's jailhouse interview of Plaintiff in connection with his criminal case. (CCSAO_001473-75.)  The fifth document, titled "General Notes on [Plaintiff]" but undated, relates to an unidentified ASA's "trial preparation," according to CCSAO's Privilege Log.  (CCSAO_001487-90; see also R. 157, Ex. B at 6.)  None of these *In Camera* Documents satisfies the requirements to qualify as protected WP in this case because CCSAO did not—and cannot—establish that they were prepared because of "an 'articulable claim' . . . likely to lead to [the current] litigation.'" *Webster*, 2018 WL 704693, at *4.  Thus, the WP doctrine does not shield them from disclosure in this civil case.

### 2.    Privilege

CCSAO fares only slightly better with respect to its Privilege assertion.  The Privilege is "a form of executive privilege," which was developed as an exception to the Freedom of Information Act ("FOIA") to "protect[] 'inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.'"  *U.S. Fish & Wildlife Serv. v. Sierra Club*, 592 U.S. 261, 267 (2021) (citing 5 U.S.C. § 552(b)(5)).  The Privilege serves "[t]o

encourage candor" and "blunt[] the chilling effect that accompanies the prospect of disclosure," thereby enabling officials to "communicate candidly among themselves" without fear of "each remark [becoming] a potential item of discovery and front page news." *Id.* (internal quotations and citation omitted). To this end, the Privilege "allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *Nat'l Immigrant Just. Ctr. v. U.S. Dep't of Just.*, 953 F.3d 503, 508 (7th Cir. 2020) (citation omitted)). That said, the Privilege is not "unlimited"—to the contrary, the Supreme Court has "repeated[ly] admoni[shed]" that "FOIA exemptions [must be construed] 'with a narrow compass.'" *Id.* (citing *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001)). As a result, the Privilege applies only to documents that are "predecisional—generated before the adoption of an agency policy—and deliberative—reflective of the give and take of the consultative process." *Saunders v. City of Chi.*, No. 12 CV 9158, 2015 WL 4765424, at *9 (N.D. Ill. Aug. 12, 2015).

> As such, to withhold subpoenaed documents based on the Privilege:
>
> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Evans v. City of Chi.*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (citation omitted). If this *prima facie* showing is made, the court then determines whether the Privilege should be recognized. If yes, the requesting party has the burden of demonstrating

a "particularized need for the documents." *Id.* (quotations and citations omitted). To determine whether a particularized need exists, the court balances the requesting party's:

> need for disclosure against the government's need for secrecy, considering such factors as (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

*K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997).

Here, ASA Lyle Henretty submitted a declaration asserting that the Privilege applies to all *In Camera* Documents because they reflect CCSAO's "process and underlying decision-making set forth in ASA notes" and "internal memoranda." (R. 171, CCSAO's Consol. Resp. Ex. 5 ¶¶ 6-7.) Henretty does not specifically identify or describe the *In Camera* Documents or explain how they qualify as predecisional or deliberative for purposes of the Privilege. Furthermore, he concedes that "some of the notes are arguably factual." (Id. ¶ 8.) And Henretty admits that he has "asserted and continue[s] to assert the deliberative process as well as the [WP doctrine] over materials related to the CSSAO decisions concerning litigation generally, unless there is a specific reason not to do so." (Id. ¶ 9.) In a case also involving Defendant Guevara and presented with similar attestations in a declaration by Henretty, another judge in this District recently commented that Henretty's declaration "only serves to raise additional questions" regarding

CCSAO's assertion of the Privilege. *Gonzalez v. Guevara*, No. 23 CV 14281, 2025 WL 755798, at *4 (N.D. Ill. March 10, 2025). This court shares that sentiment.

Henretty's declaration does little to assuage the court that CCSAO has satisfied its *prima facie* showing that the Privilege applies here. Indeed, Henretty provides only general descriptions of withheld documents, without any context or explanation as to the "precise and certain reasons for preserving the confidentiality" of that information. *Evans*, 231 F.R.D. at 316. Henretty also makes no effort to parse fact from protected information, which is important given that the Privilege "does not extend to factual or objective material." *K.L.*, 964 F. Supp. at 1208. And Henretty suggests that he asserts both the WP doctrine and Privilege interchangeably to shield "materials related to [] CCSAO decisions concerning litigation generally." (R. 171, CCSAO's Consol. Resp. ¶ 9.) This last statement is perhaps the most troubling because it lays bare what the court already suspected— that CCSAO is conflating the WP doctrine and Privilege to make an end-run around the gap in WP protection through a broad and improper application of the Privilege. *See Nat'l Immigrant Just. Ctr.*, 953 F.3d at 508 ("FOIA exemptions [must be construed] 'with a narrow compass.'").

Despite its concerns about Henretty's declaration and CCSAO's assertion of the Privilege here, the court undertook an *in camera* inspection of the subject documents. Although a few portions of the *In Camera* Documents qualify for protection under the Privilege, the court finds that CCSAO has not established that all *In Camera* Documents qualify as predecisional or deliberative discussions

14

reflecting the agency's analysis of policy issues. *See id*. This is true with respect to the redacted portions in Documents CCSAO_000768 and 000769. Both pages must be produced to Plaintiff and Defendant Officers because they merely provide information about how to calculate a statutory term for an individual on bond under Illinois law—and are neither predecisional nor deliberative.

Furthermore, the court's inspection confirms that much of the remaining redacted information relates to summaries of facts, relevant legal authority, or procedural history associated with CCSAO's prosecution of the Underlying Action, and these communications are not "inextricably intertwined" with deliberative policy-making discussions. *Enviro Tech Int'l Inc. v. United States. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004). In accordance with this ruling, Documents CCSAO_001454-62 (excluding CCSAO_001454 except "Charge" and "Trial Judge" and excluding "Recommendation" on CCSAO_001455), 001464-69 (excluding "Recommendation" on CCSAO_001469), 001473-75, and 001487-90 must be produced in response to Plaintiff's and Officers' Subpoenas.

By contrast, the redacted portions of Documents CCSAO_001453-55 (until "Charge" on 001454 and beneath "Recommendation" on CCSAO_001455), 001463, 001469 (beneath "Recommendation" and handwritten comments in same section, and 001470) qualify for protection under the Privilege, at least in the first instance, because the agency deliberations and recommendations center on whether—in August 2022, as part of post-conviction proceedings—CCSAO should retry the case or dismiss the charges against Plaintiff. More specifically, the challenged

redactions discuss the reasoning behind CCSAO's decision to move to nullify the charges against Plaintiff. *See Gonzalez*, 2025 WL 755798, at *2 (stating that the Privilege protects "communications that are part of the decision-making process of a governmental agency," including "advisory opinions, recommendations[,] and deliberations" (internal quotations and citations omitted)). Similarly, Document CCSSAO_001471 qualifies as Privileged because the handwritten and typed notes discuss an agency policy relating to pattern and practice cases. *See id.*

Because the court finds that the Privilege applies to a subset of information in the *In Camera* Documents, the court next must consider whether Plaintiff and Defendant Officers have demonstrated a "particularized need" for that subset of information. *K.L.*, 964 F. Supp. at 1209. Balancing the parties' need for disclosure against CCSAO's need for secrecy, and considering the relevant factors set forth above, the court finds that the balancing test weighs in favor of Plaintiff and Defendant Officers with respect to Documents CCSAO_001453-55, 001463, 001469, and 001470. These Documents, which discuss CCSAO's decision to *nolle* charges against Plaintiff, are no doubt relevant to this litigation. To be sure, whether CCSAO dismissed criminal charges against Plaintiff based on actual innocence matters both to Plaintiff, who asserts malicious prosecution claims in this case, and to Defendant Officers, who seek to show that CCSAO dismissed the case against Plaintiff for other reasons. The level of seriousness of these Documents to the parties in this matter is significant, and CCSAO has not pointed to other evidence from any other party that could serve the same purpose. And even though CCSAO

is a non-party here, this action arises from CCSAO's prosecution of Plaintiff. Finally, the court cannot say that disclosure of this subset of information would chill future CCSAO deliberations as to whether to *nolle* a case. Accordingly, CCSAO must produce Documents CCSAO_001453-55, 001463, 001469, and 001470 in their entirety.

As to Document CCSSAO_001471, however, the balancing test weighs in favor of CCSAO. This document relates to agency deliberations regarding pattern and practice cases. *See id.* Plaintiff and Defendant Officers have not shown a "particularized need" for such information, *K.L.*, 964 F. Supp. at 1209, and while other evidence may not provide the same type of information, the withheld information is not relevant to the parties' claims or defenses but rather involves CCSAO's strategy decisions relating to these types of cases generally. Disclosure of such information "would tend to chill future deliberations within government agencies . . . and hinder frank and independent discussion about governmental policies and decisions." *Id.* As such, the Privilege protects this document from disclosure.

For clarity, the court provides the following table identifying which *In Camera* Documents must be disclosed and which may be withheld as Privileged.

| Documents | Ruling |
|---|---|
| CCSAO_000768 and 000769 | These documents must be produced because they merely provide information about how to calculate a statutory term for an individual on bond under Illinois law and are neither pre-decisional nor deliberative. |
| CCSAO_001453-55, 001463, 001469 & 001470 | These documents must be produced because Plaintiff and Defendant Officers have demonstrated a particularized need for such information. |
| CCSAO_001454-62, 001464-69, 001473-75 & 001487-90 | These documents must be produced because they generally relate to summaries of facts, relevant legal authority, or procedural history associated with CCSAO's prosecution of the Underlying Action and are not "inextricably intertwined" with deliberative policy-making discussions. |
| CCSAO_001471 | This document need not be produced as it concerns the deliberation of CCSAO strategy regarding litigating pattern and practice cases. |

## C.    Non-Privilege Objections

CCSAO's Privilege Log also includes a significant number of documents CCSAO has redacted as reflecting PII and LEADS information, (see generally R. 157, Ex. B), but CCSAO must produce such information, except as permitted under the Confidentiality Order in this case, (see R. 117; see also R. 73; R. 149). Moreover, neither PII nor LEADS qualifies as a valid privilege or immunity and, as such, this information should not be withheld or described as "privileged." The better course of action is to mark sensitive information as "confidential" so that the receiving parties treat them accordingly.

### 1. PII

Plaintiff notes that CCSAO includes "232 line-items of [PII]" in its Privilege Log. (R. 157, Pl.'s Mot. at 14 & Ex. B.) CCSAO acknowledges that it includes in its Privilege Log documents with redactions for personal data, social security numbers, telephone numbers, dates of birth, and juror names. (R. 171, CCSAO's Consol. Resp. at 10-11.) CCSAO claims it is justified in doing so because Illinois law protects PII of crime victims, as well as that of citizens generally where it relates to "social security numbers, driver's license numbers, medical information, and personal contact information." (Id. at 11 (citing generally 725 ILCS § 120/4; 815 ILCS 530).) However, courts in this District have found that "[n]either of these statutes permits [] CCSAO to withhold from federal civil discovery the [PII requested] in the subpoenaed documents" and that governing protective orders provide adequate protection for the PII sought. *Cruz v. Guevara*, No. 23 CV 4268, Dkt. No. 147 at 8-11 (N.D. Ill. April 10, 2024); *see also Gonzalez*, 2025 WL 755798, at *8. This court adopts the same reasoning and finds in accord with that persuasive authority.

CCSAO also notes that the Confidentiality Order in this case, (see R. 117 ¶ 6), permits redactions of PII relating to "social security numbers, dates of birth," and other specified information, (R. 171, CCSAO's Consol. Resp at 11). But CCSAO's reliance on this portion of the Confidentiality Order is misplaced. Paragraph 6 of the Confidentiality Order, (R. 117), says the following:

> Notwithstanding the foregoing provisions, the responding party shall have the right to redact from all documents produced in discovery

> social security numbers, dates of birth, and information covered by the Juvenile Court Act, as well as, for security reasons, all references to a current or former individual police officer's personal identifying information about them and their family, including but not limited to, social security number, home address, home and cellular telephone numbers, personal email addresses, the names of family members and the names of insurance beneficiaries.

As such, this paragraph only covers PII falling within the purview of the Juvenile Court Act and PII of current and former law enforcement officers and their family members. Although CCSAO expresses concern about protecting PII of crime victims, jurors, and other community members, (R. 171, CCSAO's Consol. Resp. at 10-11), Plaintiff makes clear that he needs identifying information for witnesses to the alleged crimes and "alternative third-party perpetrators," (R. 157, Pl.'s Mot. at 14). CCSAO therefore must produce the PII requested in Plaintiff's and Defendant Officers' Subpoenas, except as precluded under the Confidentiality Order.

### 2. LEADS Data

Finally, CCSAO must produce the LEADS data. CCSAO represents that "LEADS data is generated and maintained by the Illinois State Police and is a form of criminal record/background check software." (R. 171, CCSAO's Consol. Resp. at 11-12.) CCSAO argues that Illinois law, codified under 20 Ill. Adm. Code 1240.80, prohibits the dissemination of LEADS data "to any individual or organization that is not legally authorized to have access to the information." (R. 171, CCSAO's Consol. Resp. at 12.) Plaintiff does not explain how such information relates to the parties' claims or defenses here. (See generally R. 157, Pl.'s Mot.) At the same time, however, CCSAO does not dispute the relevance of such information.

(See generally R. 171, CCSAO's Consol. Resp.) Regardless, courts in this District have made clear that "the Illinois Administrative Code does not usurp the authority of federal courts to order discovery of LEADS reports." *Martinez v. Guevara*, No. 23 CV 1741, Dkt. No. 203 at 10, 13-15 (N.D. Ill. Nov. 15, 2024); *see also Gonzalez*, 2025 WL 755798, at *5; *Cruz*, No. 23 CV 4268, Dkt. No. 147 at 12. Simply put, because "LEADS data is not protected by any cognizable federal privilege authorizing the withholding of the documents at issue here," *Schaeffer v. City of Chi.*, No. 19 CV 7711, 2020 WL 7395217, at *2-3 (N.D. Ill. Dec. 15, 2020), CCSAO must produce the withheld LEADS data.

## Conclusion

For the foregoing reasons, the motions are granted and CCSAO must promptly produce all documents listed on its Privilege Log in response to Plaintiff's and Defendant Officers' Subpoenas, except Document CCSAO_001471 and PII permitted to be redacted under the Confidentiality Order.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**